W. C. JORDAN v. F. S. WETMUR, TRADING AS WETMUR MOTOR COMPANY, DEFENDANT; CAROLINA DISCOUNT CORPORATION, INTERVENER.

(Filed 17 February, 1932.)

1. **Evidence C c—Burden is on intervener to establish his claim.**

     The burden is on an intervener to establish his claim or title.

2. **Chattel Mortgages B b—Prior registered chattel mortgage has priority of lien over subsequently registered title-retaining contract.**

     Where the purchaser of an automobile signs a title-retaining contract to secure the balance of the purchase price, and, prior to making the

down payment and the delivery of the car, executes a chattel mortgage thereon to a third person to secure money borrowed, and the chattel mortgage is registered prior to the registration of the title-retaining contract: *Held*, the lien of the chattel mortgage is superior to that of the title-retaining contract. C. S., 3311, 3312.

APPEAL by defendant Carolina Discount Corporation, intervener, from *Stack, J.,* and a jury, at May-June Term, 1931, of HENDERSON. No error.

The facts undisputed are as follows: The plaintiff introduced in evidence a chattel mortgage from C. G. Howard to W. C. Jordan, dated 16 January, 1930, filed for registration 16 January, 1930, at ten-twenty a.m., and recorded in Book 63, at page 28, in the records of chattel mortgages for Henderson County, which chattel mortgage secured the payment to the plaintiff of the sum of $126, and conveyed to the plaintiff mortgagee one Ford touring car, No. A-2101897, model 1929. The plaintiff also introduced a note attached to the said chattel mortgage given by the said C. G. Howard to W. C. Jordan, bearing the same date as the chattel mortgage and being in the amount of $126.

Plaintiff testified, in part: "I took this mortgage and note from C. G. Howard. He came in one or two days before he got the money and said he wanted to borrow $120 to pay for a car, and would give a mortgage on the car for that much. I agreed to lend him $126, including interest, and on 18 January he came back with the mortgage all signed and recorded. I don't know who drew it. I came to the courthouse to see if there was anything ahead of the mortgage and did not find anything so I came back and gave him the check and he turned over to me the note and mortgage. This was on 18 January. . . . Howard told me he had bought a car from Wetmur and this money was to pay for it. . . . When Howard came in and got the money, he said he was going to finish paying for a car."

The evidence on the part of the defendants: Ralph Hester, manager for Wetmur Motor Company, testified, in part: "Mr. Howard came to our place on 16 January, 1930, and wanted to trade cars. He had a 1928 Ford roadster that he wanted to trade in. We agreed on a price for his old car and he said he did not have quite enough money to make the first payment, but asked us to go ahead and trade and fix up the papers and then hold the papers and the car until he got enough money to make the down payment. He kept his old car and said he would use that until he got the rest of the money to make the down payment. He signed the contract for the car. We filled out an application for a license and title and gave that to him and he went to Asheville and got the tag and put it on the 18th, saying that he had a government check

and could finish paying for it and wanted to get the car. The car was then stored in our place. It had never been delivered. He made the cash payment and delivered his old car and the sales contract and we delivered the new car on 18 January, 1930."

The intervener, Carolina Discount Corporation, then offered in evidence a conditional sales contract between Wetmur Motor Company, dealer, and C. G. Howard, purchaser, dated 16 January, 1930. The conditional sales agreement recites that Wetmur Motor Company had on the date thereof agreed to sell and C. G. Howard agreed to buy a Ford touring car, model 1929, motor No. A-2101897, for the price of $594, of which the buyer had on that date paid to the seller the sum of $182, leaving a balance of $412.32, payable in 12 monthly installments of $34.36, each payment to be evidenced by the buyer's promissory note, the payment of which notes to be secured by the said conditional sales agreement. The agreement further provided that title to the car and extra equipment shall not pass on delivery to the buyer but shall remain vested in and be the property of the seller, or assigns, until the purchase price has been fully paid. The conditional sales agreement further provides that in the event of default by the buyer, the seller may, without demand or notice, take possession of the car, and all rights of the buyer under the agreement shall cease and terminate absolutely thereupon. The said conditional sales agreement contains an assignment thereof by the Wetmur Motor Company to Carolina Discount Corporation dated 16 January, 1930.

R. B. Hester (recalled), testified: "Mr. Howard made cash payment for this automobile on 18 January, by a government check. I think $117.70 was what he paid. Then we delivered the car. We got the money from the Carolina Discount Corporation on 18 January. We did not deposit the draft until after the car was delivered. (Cross-examination.) We made out the papers with Howard on 16 January, and he signed them then. The terms of the sale were all agreed upon and the sales contract I have been talking about was signed on 16 January, so that all he had to do was to come back and bring the cash payment and get the car, which he did on the 18th. On the 16th we gave him an application to get the title. He said he wanted to wait until he got the rest of the money, but he went to Asheville and got the license and put it on the car the next day, and said as soon as his government check came in he would come and get it. He got his license on the 17th. The Wetmur Motor Company signed an application for his license on the 16th, declaring him to be the owner of the car. He drove the car out on the 18th. Howard was killed about a year ago. I

don't think he left anything. Q. The application for title, state whether or not that showed a lien in favor of the Carolina Discount Corporation? A. Yes, it did."

The issues submitted to the jury and their answers thereto were as follows:

"1. Is the intervener the owner of and entitled to the possession of the car sued for? A. No.

2. If not, what was the value of the car at the time it was possessed by the intervener? A. $200 (by consent)."

The court below rendered judgment for plaintiff on the verdict, the intervener assigned error and appealed to the Supreme Court.

*Shipman & Arledge for plaintiff.*
*Smith & Joyner for intervener.*

CLARKSON, J. The first issue, which is determinative of the action, is as follows: "Is the intervener the owner of and entitled to the possession of the car sued for?"

The court below charged the jury "If you believe the evidence and all the evidence you will answer that issue "No." We think the charge of the court below correct under the facts and circumstances of this case.

The Carolina Discount Corporation is the intervener in this action. The burden is on it to show title—it has the laboring oar.

Speaking to the subject, it is held in *Hill v. Patillo,* 187 N. C., at p. 532: "In such a proceeding the intervener is not called on or required, and indeed he is not permitted to question the validity of plaintiff's claim against defendant, nor to file any answer thereto which denies or tends to deny its validity. On the contrary, the intervener has himself become the actor in the suit and on authority is restricted to the issue whether his claim of right and title is superior to that of the original plaintiff." *Lockhart v. Insurance Co.,* 193 N. C., at p. 12.

It will be noted that the conditional sales agreement under which the intervener claims the automobile is dated 16 January, 1930. It is therein recited "Wetmur Motor Company had on the date thereof agreed to sell and C. G. Howard agreed to buy a Ford touring car," etc. The terms were all settled and agreed upon in writing—"The coming together of two minds on a thing done or to be done." *Overall Co. v. Holmes,* 186 N. C., at p. 431.

This conditional sales agreement was signed by Howard on 16 January, and "all he had to do was to come back and bring the cash payment and get the car, which he did on the 18th." On the 16th Howard

made a chattel mortgage to W. C. Jordan, the plaintiff, which was duly recorded on that day. Plaintiff Jordan agreeing to lend Howard on the car $126 taking his note and chattel mortgage. On 18 January plaintiff went to the records and found nothing prior to this chattel mortgage and gave Howard the money. On the same day Howard gave Wetmur Motor Company the amount agreed upon under the conditional sales agreement.

C. S., 3312, is as follows: "All conditional sales of personal property in which the title is retained by the bargainor shall be reduced to writing and registered in the same manner, for the same fees and with the same legal effect as is provided for chattel mortgages, in the county where the purchaser resides, or, in case the purchaser shall reside out of the State, then in the county where the personal estate or some part thereof is situated, or in case of choses in action, where the donee, bargainee or mortgagee resides." Under C. S., 3311, provision is made as to registration of chattel mortgages.

In *Ellington v. Supply Co.*, 196 N. C., at p. 789, citing numerous authorities, is the following: "In construing the registration laws of this State, this Court has consistently held that no notice, however full and formal, will supply the place of registration." *Duncan v. Gulley*, 199 N. C., 552.

Under the facts and circumstances of this case, to have priority over plaintiff's chattel mortgage the conditional sales agreement should have been recorded first.

Plaintiff took precaution to examine the record before lending his money to Howard on the chattel mortgage which was recorded, the conditional sale was not recorded at that time.

In *Best v. Utley*, 189 N. C., at p. 364-5, the following observation is made: "The public policy, upon which our registration laws are founded, favors an interpretation and construction of statutes relative to probates and registration, which will encourage confidence in records affecting titles, rather than suspicion, doubt, or uncertainty."

The intervener has the burden to show title, from the facts appearing on this record, we do not think it has done this. In the judgment in the court below, we find